# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**ETHAN JAMES**

**CIVIL ACTION**

**VERSUS**

**NO. 18-858-JWD-EWD**

**CITY OF PLAQUEMINE, LOUISIANA, ET AL.**

## RULING AND ORDER

This matter comes before the Court on Defendants' *Motion to Dismiss* (Doc. 8) filed by Defendants City of Plaquemine, Christopher Graves, Dustin Hebert, and Kenny Payne (collectively, "Defendants"). Plaintiff Ethan James ("Plaintiff") opposes the motion. (Doc. 14.) Defendants have filed a reply. (Doc. 19.) Oral argument is not necessary. The Court has carefully considered the law, facts in the record, and arguments and submissions of the parties and is prepared to rule. For the following reasons, Defendants' *Motion to Dismiss* is granted.

## I.      Factual and Procedural Background[1]

At all relevant times, Officers Christopher Graves and Dustin Hebert were employed by the City of Plaquemine Police Department. (Doc. 1 at 1–2.) Kenny Payne was the Chief of Police in Plaquemine, Louisiana. (*Id.* at 1.)

On or about April 30, 2016,[2] Ethan James was approached by two officers, Graves and Hebert, while asleep in the driver's seat of his vehicle in a McDonalds drive through lane in Plaquemine. (Doc. 1 at 2–3.) After Plaintiff exited his vehicle pursuant to a request from Officer

---

[1] The following facts are drawn from the operative complaint ("Complaint," Doc. 1) and are assumed to be true for the purposes of this motion. *Thompson v. City of Waco, Tex.*, 764 F.3d 500, 502-03 (5th Cir. 2014).

[2] Plaintiff's complaint does not state the date of the incident. (*See* Doc. 1.) However, Plaintiff states in a status report that the officers approached Plaintiff's car "on or about April 30, 2016." (Doc. 17 at 2.) Defendants rely on this date in briefing. (Doc. 19 at 3.) Thus, the Court assumes April 30, 2016, is the date of the incident. Should he file an amended complaint, Plaintiff should clarify this ambiguity.

Hebert, Officer Graves claimed that he noticed a bag of crack cocaine sitting within the front left cupholder of the vehicle in plain view. (Doc. 1 at 3.) Plaintiff's vehicle was searched, and he was subsequently arrested for possession of cocaine with intent to distribute. (*Id*. at 2–3.)

At the time of the search of Plaintiff's vehicle, both officers wore body cameras, which allegedly contain exculpatory footage showing that there was no cocaine in the cupholder. (*Id*.) It can be heard in the body camera footage that Plaintiff requested to watch as his vehicle was searched, but his request was denied. (*Id*. at 5.) The footage further shows that during the officers' search, Officer Graves stated that "he had not yet found anything in the vehicle." (*Id*. at 3.)

In his state criminal proceedings, Plaintiff was originally represented by a public defender. (*Id*. at 4.) On July 6, 2016, Plaintiff's attorney requested exculpatory information from the prosecutor, including, the video footage of the search of his vehicle. (*Id*. at 3.) Plaintiff alleges that the prosecutor did not turn over the video to his counsel until his new attorney filed a discovery motion on November 30, 2018, "over two years after Plaintiff's arrest."[3] (*Id*. at 4–5.) On February 27, 2018, the prosecutor dismissed the charges against Plaintiff. (*Id*. at 1–2.)

Plaintiff filed suit on September 21, 2018. (Doc. 1.) Among the defendants named are Officers Christopher Graves and Dustin Hebert, sued in both their official and individual capacities under 42 U.S.C. § 1983. (*Id*. at 1–2.) Plaintiff also asserts claims against Chief of Police Kenny Payne[4] and the City of Plaquemine Police Department. (*Id*. at 1.)

---

[3] Plaintiff states in a status report that "the body camera footage was not turned over to the prosecutor nor the defense until December 8, 2017, over a year and a half later." (Doc. 17 at 2.) However, he states in briefing that he received the exculpatory evidence on or about December 11, 2017. (Doc. 14 at 3.) Plaintiff's complaint states that he did not receive the evidence until November 2018. (Doc. 1 at 4–5.) Thus, it is unclear when Plaintiff received the exculpatory evidence, but the Court will use the date in the Complaint.

[4] Plaintiff sues Defendant Payne "in both his individual and personal capacities." (Doc. 1 at 1.) As Plaintiff makes official-capacity arguments in a later filing, (*see* Doc. 14 at 6–7), the Court assumes that he intended to sue Chief Payne in both his individual and official capacities.

## II.    Rule 12(b)(6) Standard

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pled factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). To defeat a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *id.*, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" are not sufficient. *Iqbal*, 556 U.S. at 678.

## III.    Pleading Deficiencies

The Court notes at the outset of its analysis that Plaintiff's complaint suffers from several distinct pleading deficiencies and fails to meet the requirements of the pleading standards established by Rules 8 and 10 of the Federal Rules of Civil Procedure,[5] tasking both Defendants and the Court with sorting through an amalgamation of potential claims "interwoven in a haphazard fashion." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985)). In *Weiland*, the Eleventh Circuit identified four types of "shotgun pleadings"— imprecise complaints

---

[5] Rule 8 provides, among other things, that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10 requires a complaint to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

that fail "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323.

Specifically, the complaint here fails to separate Plaintiff's claims into distinct causes of action or clearly differentiate between his state and federal claims. Thus, it is unclear to both Defendants and the Court (1) exactly which claims Plaintiff is asserting; (2) which claims are brought under federal law, which are brought under state law, and which are both state and federal claims; and (3) which claims are asserted against which Defendants. This is an example of a "shotgun complaint" which fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323. By failing to separate each claim into a separate cause of action with the corresponding factual support *for that claim only* and failing to differentiate between the state and federal claims, the complaint violates the letter and spirit of Rules 8 and 10. To the extent Plaintiff wishes to amend his complaint, he must state his claims in separate causes of action in accord with the pleading requirements of the Federal Rules of Civil Procedure.

Nevertheless, based on the facts alleged and the named defendants, the Court construes the complaint as containing alleged violations of Plaintiff's rights under the Fourth, Fifth, and Fourteenth Amendments under 42 U.S.C. § 1983, which includes claims against the individual defendants in both their official and individual capacities. Additionally, the complaint appears to assert several claims under state law.

## IV. Discussion

### A. Prescription of Fourth Amendment Claims

#### 1. Parties' Arguments

Defendants argue that Plaintiff's claim for unreasonable search and seizure has prescribed.

(*Id.* at 4.) They state that the Plaintiff had knowledge of his injury on the date of the search, April 30, 2016, starting the clock on the statute of limitations over two years before the present action was filed. (Doc. 8-1 at 4; Doc. 19 at 3.) Because federal courts borrow the forum state's personal injury prescriptive period, Defendants state that Louisiana's one-year prescriptive period applies, and as a result, the alleged Fourth Amendment violation prescribed on April 30, 2017. (Doc. 8-1 at 5; Doc. 19 at 3.)

Plaintiff contends that his claim for unreasonable search or seizure did not accrue until his criminal charges were dismissed or the date that his attorney received the body camera footage because there was no proof that the search of James' vehicle was unjust or unsupported by probable cause until that point. (Doc. 14 at 1.) He argues that the doctrine of *contra non valentem* applies because there was a legal impediment to bringing his claim until his charges were dismissed and because his Fourth Amendment cause of action was not reasonably knowable by the Plaintiff until he received the exculpatory body camera footage. (*Id.* at 2.) Plaintiff asserts that under the continuing tort theory of negligence, prescription could not accrue until after the body camera footage was provided to his attorney. (*Id.* at 5.) Furthermore, he could not pursue his malicious prosecution claim until there was "bona fide termination in the plaintiff's favor." (*Id.*) Thus, he concludes that this claim could not have begun to run until the charges were dismissed. (*Id.* at 6.)

### 2. Analysis

#### a. Vehicle Search

Plaintiff alleges that Officers Graves and Hebert conducted an unlawful search of his vehicle, unsupported by probable cause, in violation of the Fourth Amendment. (Doc. 1 at 3.) While the limitations period is determined state law, the accrual of a § 1983 claim is a matter of federal law. *Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). "Under federal law, the

limitations period begins to run the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001) (internal quotation marks omitted). The prescriptive period for a claim under § 1983 in Louisiana is one year. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998). In the case of an alleged illegal search, prescription begins to run at the time of the search, as that is the moment the plaintiff "becomes aware that he has suffered an injury." *Piotrowski*, 237 F.3d at 576; *see also McLin v. Ard*, No. 13-538, 2016 WL 482046, at *2 (M.D. La. Feb. 5, 2016), *aff'd*, 866 F.3d 682 (5th Cir. 2017) ("[T]he law clearly states that prescription begins to run at the time of the search in the case of an alleged illegal search."). Additionally, and of particular note here, "[a] federal court applying a state statute of limitations should give effect to the state's tolling provisions as well." *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992).

In the present case, Officers Graves and Hebert searched Plaintiff's vehicle "on or about" April 30, 2016. (Doc. 17 at 2.) Plaintiff should have been aware that he suffered an injury and that there was a connection between his injuries and the officers' actions, as Plaintiff alleges that the officers essentially lied about the presence of contraband in the cupholder of his vehicle. (Doc. 1 at 3.) Thus, as his allegations currently stand, the statute of limitations for Plaintiff's Fourth Amendment claim began to run on April 30, 2016. Because Plaintiff filed suit over two years later on September 21, 2018, his Fourth Amendment claim arising out of the purportedly illegal search of his vehicle is time-barred.

Plaintiff argues that Louisiana's doctrine of *contra non valentem* applies here to toll the prescriptive period. (Doc. 14 at 2.) The four situations in which *contra non valentem* can apply are as follows:

> (1) Where there was a legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where some condition

> coupled with the proceedings prevented the creditor from suing or acting; (3) where the debtor has done an act to prevent the creditor from using the cause of action; (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though he is not induced by the defendant.

*Burge v. Par. of St. Tammany*, 996 F.2d 786, 788 (5th Cir. 1993) (quoting *Minor v. Casten*, 521 So.2d 465, 467 (La. Ct. App. 1988)). Plaintiff contends that the first and fourth scenarios are applicable here. (Doc. 14 at 2). Plaintiff states that the prosecution of his case was a legal impediment to bring his § 1983 claim, and that he "did not know and could not reasonably have known that a cause of action existed until he was provided with the exculpatory evidence." (*Id*.)

Though Plaintiff asserts that there was a legal impediment to bring his lawsuit, his argument relies upon the contention that he could not have reasonably brought his claim while being prosecuted. "*Contra non valentem* cannot apply merely where as a practical matter, filing suit is difficult or the prospects of success on the merits are slight due to a given plaintiff's situation." *Sincox v. Blackwell*, 525 F. Supp. 96, 99 (W.D. La. 1981). And Plaintiff pointed to no legal authority standing for the proposition that an ongoing criminal prosecution acts as a legal impediment and tolls the statute of limitations. Thus, although the plaintiff's prospects of success on his § 1983 claims grew with his acquisition of the exculpatory footage, he did not show that there was a legal impediment preventing him from bringing suit.

Further, the other category of *contra non valentem* cannot save Plaintiff's Fourth Amendment Claim. "As a judicial exception to the statutory rule of prescription, Louisiana courts strictly construe this doctrine and only extend its benefits up to 'the time that the plaintiff has actual or constructive knowledge of the tortious act.'" *Eldredge v. Martin Marietta Corp.*, 207 F.3d 737, 743 (5th Cir. 2000) (quoting *Bergeron v. Pan Am. Assurance Co.*, 98-2421 (La. App. 4 Cir. 4/7/99); 731 So. 2d 1037, 1042)). The Fifth Circuit defines this as "the time at which the plaintiff has information sufficient to excite attention and prompt further inquiry." *Id*. On April 30, 2016,

officers searched Plaintiff's vehicle and supposedly found cocaine in plain view, prompting Plaintiff's arrest. (Doc. 17 at 2.) Plaintiff denied having cocaine in his vehicle. (Doc. 1 at 5.) Thus, at this point, Plaintiff had "information sufficient to excite attention and prompt further inquiry." *Eldredge*, 207 F.3d at 743. Because Plaintiff should have then had "actual or constructive knowledge of a tortious act," *id.*, his argument that he could not have reasonably known of the existence of his cause of action is unpersuasive, and the doctrine of *contra non valentem* cannot apply to toll the statute of limitations on this basis. Thus, Plaintiff's Fourth Amendment search claim has prescribed.

### b. Seizure

To determine the accrual date of a plaintiff's § 1983 claim based upon a Fourth Amendment seizure, the Fifth Circuit has analogized the plaintiff's claim to the common law of torts to determine whether it more closely resembles a claim for false imprisonment or malicious prosecution. *Winfrey v. Rogers*, 901 F.3d 483, 492–93 (5th Cir. 2018). The Supreme Court has also noted the difference. The *Winfrey* court explains that detainment without legal process more closely resembles a false imprisonment claim, which accrues once the plaintiff is "detained pursuant to legal process." *Id.* at 492. Alternatively, "detention accompanied by wrongful institution of legal process" more closely resembles malicious prosecution, which accrues once prosecution terminates in the plaintiff's favor. *Id.* (internal quotation marks omitted). In *Winfrey*, this determination was based on whether officers conducted a warrantless arrest, or whether they conducted an arrest pursuant to a warrant supported by fabricated evidence. *Id.*

The Supreme Court has also noted the difference in false imprisonment and malicious prosecution. "Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held *pursuant to such process*—when,

for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 549 U.S. 384, 389, 127 S. Ct. 1091, 1096 (2007) (emphasis in original). Further, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process." *Id*. at 390 (emphasis in original.)

Here, Plaintiff was arrested following a warrantless search of his vehicle after the officers had received an anonymous tip. Thus, a natural inference from Plaintiff's allegations is that he was subjected to a warrantless arrest.[6] Accordingly, as currently pled, his Fourth Amendment claim more closely resembles a false imprisonment claim which accrued once he was detained pursuant to legal process—*i.e.*, once he was arraigned. Plaintiff failed to provide this timeline in his complaint, but in any event, his detention likely commenced when he was arrested on April 30, 2016. (Doc. 1 at 2.) In Louisiana, a defendant must be indicted within sixty days of an arrest if the defendant is being held for a felony. La. Code Crim. Proc. Art. 701.B(1)(a). Further, upon indictment, the defendant must be arraigned within thirty days unless just cause is shown. La. Code Crim. Proc. Art. 701.C. Therefore, if Plaintiff was arrested on April 30, 2016, the latest he would have been arraigned would likely have been July 29, 2016. Because he did not file suit until September 21, 2018, his Fourth Amendment seizure claim is time-barred as it is currently pled.

### B. Fourteenth Amendment Due Process Violations

#### 1. Parties' Arguments

Defendants contend that Plaintiff has not met his burden to bring § 1983 claims against Chief Payne in his individual capacity, as he did not allege any personal conduct by Chief Payne

---

[6] This is one of several omissions in Plaintiff's complaint. Should Plaintiff file an amended complaint, he must explicitly allege whether he was arrested pursuant to a valid warrant or in the absence of a warrant following a warrantless search.

giving rise to a constitutional violation. (Doc. 8-1 at 6–7.) Defendants argue that the Plaintiff has

not identified "an unconstitutional municipal policy or custom" that caused his injury. (*Id*. at 9.)

As a result, the official-capacity claims against Chief Payne and the City of Plaquemine Police

Department are inadequately pled. (*Id*. at 11.) Further, Defendants assert that § 1983 claims against

Officers Graves and Hebert should be dismissed as the Plaintiff has "failed to allege that they are

final decision makers or policy makers within the Plaquemine Police Department." (*Id*.)

Plaintiff contends that his constitutional right "to be free from prosecution not grounded in

probable cause under the Fourteenth Amendment" was violated due to the unlawful suppression

of exculpatory evidence by Officers Graves and Hebert. (Doc. 1 at 6.) Specifically, he alleges that

he was subject to a malicious prosecution from the date of his arrest until the charges were

dismissed on March 26, 2018. (*Id*. at 2.) He also alleges that the withholding of the body camera

footage by Officers Graves and Hebert was a *Brady* violation. (Doc. 1 at 3–4.)

### 2. Malicious Prosecution

This Court has previously stated that there is no independent tort for malicious prosecution

under § 1983:

> Section 1983 is not a source of substantive rights; it simply provides a vehicle for
> vindicating federal rights secured elsewhere. *Albright v. Oliver*, 510 U.S. 266, 270
> (1994) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979)). Thus, in any Section
> 1983 action, "[t]he first step ... is to identify the specific constitutional right
> allegedly infringed." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989);
> *Baker*, 443 U.S. at 140). There is no freestanding constitutional right to be free from
> malicious prosecution. *Castellano v. Fragozo*, 352 F.3d 939, 942, 945 (5th Cir.
> 2003) (" 'malicious prosecution' standing alone is no violation of the United States
> Constitution[;] ... to proceed under [Section 1983] such a claim must rest upon a
> denial of rights secured under federal and not state law.") A claim for malicious
> prosecution brought under Section 1983 must be judged against the strictures of the
> Fourth Amendment. *Albright*, 510 U.S. at 270. Courts tasked with evaluating a
> malicious prosecution claim under Section 1983 "must insist on clarity in the
> identity of the constitutional violations asserted" so as to avoid the adjudication of

claims that are "embedded, but float unspecified, undefined, and hence unconfined inside a general claim of malicious prosecution." *Castellano*, 352 F.3d at 945.

At the heart of a federal claim of malicious prosecution brought under Section 1983 is the "initiation of charges without probable cause". *Id.* (citation omitted). It "occurs when one citizen initiates or procures the initiation of criminal proceedings against an innocent person, for an improper purpose and without probable cause therefor, if the proceedings terminate favorably for the person thus prosecuted." *Id.* (citing Fowler V. Harper et al., The Law of Torts § 4.1 (3d ed.1996)).

The Fifth Circuit has also described the claim for malicious prosecution as not "independently cognizable" under § 1983. *Deville v. Marcantel*, 567 F.3d 156, 169–70 (5th Cir. 2009); *Golden v. Columbia Cas. Co.*, 2015 WL 3650761 at *28 (M.D. La. June 11, 2015) (citing *Deville*). Instead, the court has explained:

> it must be shown that the officials violated specific constitutional rights in connection with a "malicious prosecution." For example, "the initiation of criminal charges without probable cause may set in force events that run afoul of the ... Fourth Amendment if the accused is seized and arrested ... or other constitutionally secured rights if a case is further pursued." *However, these* "*are not claims for malicious prosecution.*" Accordingly, plaintiffs' claim under § 1983 for "malicious prosecution" in respect to the May 2006 arrest is not independently cognizable[.]

*Deville*, 567 F.3d at 169 (citations omitted) (emphasis added).

*Laird v. State Farm Fire & Cas. Co.*, No. 16-707, 2017 WL 2239578, at *8 (M.D. La. May 22, 2017).

Here, this Court holds that Plaintiff has failed to state a claim for malicious prosecution because he has failed to allege another plausible constitutional violation. Although Plaintiff has alleged a *Brady* violation, as will be discussed below, the claim shall be dismissed. Because there is no independently cognizable tort of malicious prosecution, Plaintiff's claim must be dismissed.

### 3. *Brady* Violation

"The Fifth Circuit has repeatedly recognized the existence of a § 1983 cause of action for a police officer's suppression of material exculpatory evidence." *Bibbins v. City of Baton Rouge*, 489 F. Supp. 2d 562, 573 (M.D. La. 2007) (citing *Mowbray v. Cameron Cty., Tex.*, 274 F.3d 269,

278 (5th Cir. 2001); *Sanders v. English*, 950 F.2d 1152, 1162 (5th Cir. 1992); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir. 1988)).

"[T]o establish a *Brady* violation, a defendant must make the following showing: 'The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.'" *Powell v. Quarterman*, 536 F.3d 325, 335 (5th Cir. 2008) (quoting *Strickler v. Green*, 527 U.S. 263, 281–82, 119 S. Ct. 1936, 1948 (1999)). Plaintiff here has sufficiently alleged how the evidence would be exculpatory to him, but he has not shown that he was prejudiced in violation of his due process rights. Because the charges were dismissed prior to trial, he cannot show that the withholding of evidence affected the outcome of his trial, and thus, Plaintiff's alleged *Brady* violation is not cognizable under § 1983. *See Matthew v. Johnson*, 201 F.3d 353, 361 (5th Cir. 2000) ("The *Brady* rule's focus on protecting the integrity of trials suggests that where no trial is to occur, there may be no constitutional violation."); *see also Strickler*, 527 U.S. at 281–82 ("[T]here is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict."); Professor Martin A. Schwartz, *The Supreme Court's Unfortunate Narrowing of the Section 1983 Remedy for Brady Violations*, CHAMPION, May 2013, at 57, 62 ("Because *Brady* is a trial right, the great weight of lower court authority holds that a criminal defendant who did not have a criminal trial because the criminal charges were dropped cannot base a § 1983 claim on a *Brady* violation.").

### 4. Defamation

In *Paul v. Davis*, the Supreme Court held that an interest in reputation is not a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause. 424 U.S. 693,

712, 96 S. Ct. 1155, 1166 (1975). Plaintiff relies upon *Marrero v. City of Hialeah*, in which the Fifth Circuit stated that the *Paul* Court "did not even suggest that injuries to personal and business reputations flowing from a violation of a protected right are not compensable under § 1983." 625 F.2d 499, 514 (5th Cir. 1980). Plaintiff further states that because he alleged a Fourth Amendment violation, injuries related to defamation are "compensable as an element of damages flowing from the unlawful conduct." (Doc. 14 at 9.)

Despite Plaintiff's contention, the case law is unequivocal that defamation alone does not constitute the constitutional violation necessary to support a § 1983 claim. *See, e.g.*, *Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 161; 131 S. Ct. 746, 765; 178 L.Ed.2d 667 (2011) ("we have held that a government act of defamation does not deprive a person 'of any "liberty" protected by the procedural guarantees of the Fourteenth Amendment.' ") (quoting *Paul*, 424 U.S. at 709); *San Jacinto Sav. & Loan v. Kacal*, 928 F.2d 697, 701 (5th Cir. 1991) ("This circuit has consistently applied *Paul* by requiring that a section 1983 claimant show a stigma *plus* an infringement of some other interest."). The Fifth Circuit has made clear that "reputation alone is not a protected liberty interest—a plaintiff must show a stigma *plus* an infringement on some other interest." *Phillips v. Vandygriff*, 711 F.2d 1217, 1221 (5th Cir. 1983) (emphasis in original). "To satisfy the 'stigma' part of the test, 'a claimant must prove that the stigma was cause by a false communication.' " *Lewis v. Locicero*, No. 15-129, 2016 WL 831939, at *4 (M.D. La. Feb. 29, 2016) (quoting *San Jacinto Sav. & Loan*, 928 F.2d at 701-02 (quoting *Codd v. Velger*, 429 U.S. 624 (1977)). To show "infringement," a claimant must "establish that the state sought to remove or significantly alter a life, liberty, or property interest recognized and protected by state law or guaranteed by one of the provisions of the Bill of Rights that has been 'incorporated." *Id*. (quoting *San Jacinto Sav. & Loan*, 928 F.2d at 701-02 (citing *Paul*, 424 U.S. at 710-11 & n.5.))

Here, Plaintiff fails to satisfy the either portion of the test. Plaintiff has not alleged the "concrete, false factual representations or assertions, by a state actor, of wrongdoing" necessary to allege a "stigma." *San Jacinto Sav. & Loan*, 928 F.2d at 701. Additionally, Plaintiff fails to establish plausible claims to show "infringement" of a "life, liberty, or property interest." *Lewis*, 2016 WL 831939, at *4. Thus, because Plaintiff's other claims are dismissed, his defamation claim may not stand alone.

### C. Fifth Amendment Violation

Plaintiff argues that the allegedly unlawful suppression of exculpatory evidence was a violation of his procedural due process rights under the Fifth Amendment. (Doc. 1 at 6.) It is well established, however, that "the Fifth Amendment applies only to the actions of the federal government, and not the actions of a municipal government." *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996). Because Plaintiff has brought claims against municipal police officers and not federal officials, he cannot state a plausible claim under the Fifth Amendment.

### D. Official-Capacity Claims

#### 1. Parties' Arguments

Defendants argue that the Plaintiff has not identified "an unconstitutional municipal policy or custom" that caused his injury. (Doc. 8-1 at 9.) As a result, the official-capacity claims against Chief Payne and the City of Plaquemine Police Department are inadequately pled. (*Id.* at 11.) They further argue that § 1983 claims against Officers Graves and Hebert should be dismissed as the Plaintiff has "failed to allege that they are final decision makers or policy makers within the Plaquemine Police Department." (*Id.*).

In the "Individual Capacities" section of his brief, Plaintiff only sets forth official-capacity arguments, stating that he has established a sufficient claim against Officer Payne in his "official

capacity." (Doc. 14 at 6–7.) He supports this by pointing to a change in the official policy of the police department regarding body cameras, as well as a television interview in which Chief Payne allegedly condoned the officers' actions as official policy. (*Id.*)

## 2. Analysis

Official capacity suits are treated as an action against the entity for which the official serves. *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 362 (1991). Accordingly, Plaintiff's official-capacity claims against the individual Defendants are akin to claims against the City of Plaquemine itself.

### a. Municipal Liability

"Municipal liability under 42 U.S.C. § 1983 requires proof of (1) a policymaker; (2) an official policy; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." *Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009). The Fifth Circuit has defined an "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority. Actions of officers or employees of a municipality do not render the municipality liable under § 1983 unless they execute official policy as above defined.

*Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984), *on reh'g*, 739 F.2d 993 (5th Cir. 1984). As Plaintiff has not alleged any official policy in his complaint that resulted in the violation of his constitutional rights, his official-capacity § 1983 claims must be dismissed.

Plaintiff further alleges that the Plaquemine Police Department is liable under § 1983 for the alleged unconstitutional acts of its agents. (Doc. 1 at 7.) But it is a bedrock principle of § 1983 law that "government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676, 129 S. Ct. 1937, 194 (2009). Thus, any federal claim based on a theory of *respondeat superior* liability is dismissed.

### b. Failure to Hire/Train/Supervise

To make out a viable § 1983 claim for failure to train or supervise, a plaintiff must allege that: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). "Proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights." *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008) (internal quotation marks omitted). Furthermore, "for liability to attach based on an 'inadequate training' claim, a plaintiff must allege *with specificity* how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) (emphasis added). Finally, and importantly, "the pleadings must have sufficient precision and factual detail to reveal that more than guesswork is behind the allegation." *Floyd v. City of Kenner*, 351 F. App'x 890, 898 (5th Cir. 2009).

Plaintiff has fallen well short of these standards by asserting only the conclusory, barebones allegation that Chief Payne failed to "properly hire, train, supervise, and monitor the officers, and/or deputies employed by or acting as agents of the Plaquemine Police Department." (Doc. 1 at 7). Crucially, he did not allege factual detail to show (1) how Chief Payne failed to supervise

or train the officers, (2) that a causal link existed between the specific failure to train and the alleged violations of Plaintiff's rights, or (3) how Chief Payne was deliberately indifferent. Plaintiff did not allege a pattern of violations nor did he provide any specificity regarding how, exactly, the training program in place was defective. This is plainly insufficient for a § 1983 claim based on a failure to train or supervise.

Moreover, though it is possible for an official to be liable for his deliberately indifferent hiring of an officer who violates the constitution, a plaintiff must allege that the hired officer "was highly likely to inflict the *particular* injury suffered by the plaintiff." *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 412, 117 S. Ct. 1382, 1392 (1997) (emphasis in orginal). "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.* Plaintiff here has failed to plead any facts suggesting that the backgrounds of the officers in this case had any connection to the injury of which he complains. For all these reasons, this claim must be dismissed.

### E. Punitive Damages

#### 1. Parties' Arguments

Defendants argue that the Plaintiff cannot recover punitive damages against Defendants in their official capacities, as "§ 1983 does not allow for recovery of punitive damages against a governmental agency." (Doc. 8-1 at 15.)

Citing case law, Plaintiff argues that contrary to Defendants' assertion that § 1983 does not allow punitive damages against officials sued in their municipal capacity "punitive damages are recoverable against municipal employees who are sued in their individual capacities pursuant to a § 1983 claim." (Doc. 14 at 9 (quoting *Kennerson v. City of Sunset,* No. 6:12-cv-2191, 2013 WL 1681434 (W.D. La. Apr. 17, 2013)).)

## 2. Analysis

Municipalities are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts Inc.*, 453 U.S. 247, 271, 101 S. Ct. (1981). However, punitive damages are recoverable against municipal employees sued in their individual capacity. *Kennerson v. City of Sunset,* No. 12-2191, 2013 WL 1681434 (W.D. La. Apr. 17, 2013). To recover punitive damages, Plaintiff must show that Defendants' conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protect rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983). However, the Court does not need to reach the issue of whether the officers' conduct was "motivated by evil intent" because all other § 1983 claims have been dismissed, so Plaintiff's punitive damage claim is also dismissed.

### F. State Law Claims

#### 1. Parties' Arguments

Defendants argue that the Plaintiff has failed to establish state-law claims by Chief Payne or the City of Plaquemine. (Doc. 8-1 at 15.) They argue that the claim that Chief Payne "failed to 'properly hire, train, supervise, and monitor' the officers" is a conclusory allegation without the requisite factual support. (*Id*. at 15 (quoting Doc. 1).) They further argue that Payne is shielded from liability pursuant to Louisiana Revised Statute § 9:2798.1 because the "hiring, training, and supervision policy of the Plaquemine Police Department is a discretionary function." (Doc. 8-1 at 16.)

Plaintiff argues that the case relied upon by Defendants in support of their contention that Chief Payne is shielded by Louisiana Revised Statute § 9:2798.1 is inapplicable. (Doc. 14 at 9.) This is because the deputy in that case was not in the course and scope of his employment when he violated the law, while Defendants Graves and Hebert were in the course and scope of their

employment here when they committed a tort against the Plaintiff. (*Id.* (citing *Smith v. Lafayette Parish Sheriff's Dept.*, 2003-517 (La. App. 3 Cir. 4/21/04); 874 So.2d 863)).

## 2. Discretionary Function Immunity

Defendants move for the dismissal of the state-law claim for "failure to properly hire, train, supervise, and monitor officers . . . due to the immunity provided by La. R.S. § 9:2798.1." (Doc. 8-1 at 16.)  That statute provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts[.]" La. R.S. § 9:2798.1.

This Court finds that the discretionary function immunity provided by La. R.S. § 9:2798.1 is not available as an affirmative defense in the motion to dismiss stage because it is a fact-intensive question. *See Abbott v. Town of Livingston*, No. 16-188, 2018 WL 1095557, at *5 (M.D. La. Feb. 27, 2018) ("Discretionary function immunity is not available to a sheriff as an affirmative defense at the motion to dismiss stage because it is a fact-intensive question."); *Bouchereau v. Gautreaux*, No. 14-805, 2015 WL 5321285, at *15 (M.D. La. Sept. 11, 2015) ("[D]iscretionary function immunity is not available to [sheriff] as an affirmative defense at the motion to dismiss stage."); *O'Quin v. Gautreaux*, No. 14-98, 2015 WL 1478194, at *11-12 (M.D. La. Mar. 31, 2015). However, this Court notes that "[i]t is appropriate for a court to grant a party discretionary function immunity if it decides on a summary judgment motion that there is no dispute concerning a matter of fact such as a whether the government official's decisions was 'grounded in "social, economic, or political policy." ' " *O'Quin*, 2015 WL 1478194 at *12 (quoting *Johnson v. Orleans Parish Sch. Bd.*, 06-1223 (La. App. 4 Cir. 1/30/08); 975 So. 2d 698, 709).

### 3. Failure to Hire, Train, and Supervise

Although Defendants cannot claim discretionary function immunity, Plaintiff's claim for negligent hiring, training, and supervising must still be dismissed. Plaintiff has failed to allege any of the elements necessary to state a negligence claim in Louisiana.

Louisiana courts analyze failure to hire, train, and supervise claims under the same duty-risk analysis used for all negligence cases in Louisiana. *Jackson v. Ferrand*, 94-1254 (La. App. 4 Cir. 12/28/94); 658 So.2d 691. "For Plaintiff[] to recover on [his] state law negligence claims [he] must show that (1) the Defendants' conduct was the cause in fact of the harm, (2) the Defendants owed a duty of care to [Plaintiff], (3) the duty was breached, and (4) the risk was in the scope of harm afforded by the duty." *Batiste v. Theriot*, 458 F. App'x. 351, 360 (5th Cir. 2012) (citing *Syrie v. Schilhab*, 693 So.2d 1173, 1177 (La. 1997)).

Here, Plaintiff has only made the barebones assertion that "Kenny Payne, Chief of Police of the City of Plaquemine, as supervising authority, is liable for his failure to properly hire, train, supervise, and monitor the officers, and/or deputies employed by or acting as agents of the Plaquemine Police Department." (Doc. 1 at 7.) This assertion fails to show how Chief Payne breached his duty of reasonable care. Without more, Plaintiff's claim for negligent hiring, training, and supervising must be dismissed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

To the extent Plaintiff desires to bring any other claims under Louisiana law, he must do so clearly and precisely by articulating his claims unambiguously and separating those claims into distinct causes of action.

## V.     Leave to Amend

"[A] court ordinarily should not dismiss the complaint except after affording every opportunity to the plaintiff to state a claim upon which relief might be granted." *Byrd v. Bates*, 220 F.2d 480, 482 (5th Cir. 1955). The Fifth Circuit has further stated:

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).

One leading treatise has further explained:

> As the numerous case[s] ... make clear, dismissal under Rule 12(b)(6) generally is not immediately final or on the merits because the district court normally will give the plaintiff leave to file an amended complaint to see if the shortcomings of the original document can be corrected. The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that the plaintiff be given every opportunity to cure a formal defect in the pleading. This is true even when the district judge doubts that the plaintiff will be able to overcome the shortcomings in the initial pleading. Thus, the cases make it clear that leave to amend the complaint should be refused only if it appears to a certainty that the plaintiff cannot state a claim. A district court's refusal to allow leave to amend is reviewed for abuse of discretion by the court of appeals. A wise judicial practice (and one that is commonly followed) would be to allow at least one amendment regardless of how unpromising the initial pleading appears because except in unusual circumstances it is unlikely that the district court will be able to determine conclusively on the face of a defective pleading whether the plaintiff actually can state a claim for relief.

5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (3d ed. 2016).

Here, although Plaintiff has not requested leave to amend to cure any deficiencies, the Court will act in accordance with the "wise judicial practice" and general rule and grant Plaintiff

leave. The Court notes Plaintiff's Rule 11 obligations, particularly in light of the numerous pleading deficiencies detailed above.

## VI.    Conclusion

Accordingly,

**IT IS ORDERED** that Defendants' *Motion to Dismiss* (Doc. 8) is **GRANTED**. The claims asserted by Plaintiff Ethan James are **DISMISSED WITHOUT PREJUDICE**. Plaintiff is given twenty-eight (28) days in which to amend his complaint to cure the deficiencies therein. If Plaintiff fails to do so, the insufficient claims will be dismissed with prejudice. Defendant is hereby instructed to contact the Court if Plaintiff has not timely amended the operative complaint to cure the above deficiencies.

Signed in Baton Rouge, Louisiana, on September 17, 2019.

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**